Our next case for argument is Roberts v. Smith & Wesson. Mr. Scheidemann. Good morning, Your Honors, and may it please the Court. Ed Scheidemann for Appellants, Smith & Wesson Brands, Inc., Smith & Wesson Sales Company, and Smith & Wesson, Inc. We'd like to reserve three minutes, if we could. Your Honors, this case is about an attempt to use a state court to overturn a 60-year approach to classifying firearms under the National Firearms Act, a uniquely federal function approved by Congress and implemented by the ATF. How do we know this? It's in the plaintiff's pleadings and their allegations. The plaintiff asked that the state court… Counsel. Yes. Smith & Wesson may have a very good defense on the merits, but the question here is, in what forum will the case be heard? That's right. State courts are quite competent to hear federal defenses. You come to us and say that Smith & Wesson acted under federal law, and I find that extremely hard to square with the Supreme Court's holding in Watson against Philip Morris. So I hope you will address that issue rather than talk about your defense on the merits. Sure, let's talk about Watson. Watson, I think, also is particularly instructive here, Judge Easterbrook. There, the Supreme Court addressed how you determine whether a company was merely regulated, which is what Judge Seeger found below, or acting under federal officials. And frankly, even when a suit, although naming a private company, is really directed to a federal agency. The federal officer statute is a suit in state court directed to an agency or someone acting under. There are two avenues. So the question before the court in Watson was whether Philip Morris, in carrying out testing of cigarettes, was merely complying with regulations or acting under the federal official. There, as opposed to here, Philip Morris was extensively supervised and closely monitored by the government. I don't understand why monitored is any different than Watson against Philip Morris or Liu Junhong against Boeing or Martin against Peterson Health Operations, just to go through the local cases. You are not arguing, as I understand it, that federal agents required your client to make AR-15 style rifles. No. Are you making such an argument? No. You're arguing that they regulated the manufacture of these items. Well, there's a regulatory aspect to it, but there's also more of a partnership, which special relationship in the terms, to use the parlance of Watson. That's bureaucraties. It didn't work in Watson. It didn't work in Liu Junhong, where, as you recall, the FAA delegated to Boeing certification of compliance. And I think Boeing had to certify that. And we held that was not enough. Right. Well, if I can quote from Watson, and how to decipher whether a company is merely regulated or acting under, a state court lawsuit brought against such a company is unlikely to disable federal officials from taking necessary action designed to enforce federal law. This case is like Watson, except one factor we would posit, Judge Easterbrook. Imagine in Watson if not only did they say they were acting under, but they asked a state court to make a ruling that the classification used by the FTC was incorrect. So it's not just the acting under prong. It is a directed to the agency. In tort cases, in drug cases involving the manufacture of drugs, it's perfectly normal to file a lawsuit in state court and say this was a dangerous drug. It's true. The FDA allows it on the market, but we still think it's dangerous. Those cases are litigated in state court all the time. Why is this any different? Well, this is a case in state court where they're asking a state court judge to rule under the NFA and classify a firearm as an illegal NFA weapon. That doesn't really seem very different from saying that the FDA was wrong to approve a drug. Could I ask you, Mr. Scheidemann, about some language in your brief? You bet. When you describe the July 4th massacre in Highland Park, you say that CRIMO began shooting from a rooftop into the crowd, killing or wounding, quote, several people. You're familiar in criminal cases, as we are probably, with the concept of minimization. And I'm tempted to take up some of your argument time listing the names of the seven people who were killed and the 48 who were wounded. Perhaps I could just ask you to agree with me that maybe several was not really a sufficient description of what happened? Your Honor, I'd like to be heard directly on that. Please. You're absolutely right. We did not intend to minimize at all what happened on July 4th, not even slightly. It was tragic. It was absolutely horrible. However, our position is it wasn't the result of deceptive, negligent marketing by Smith & Wesson. And the state court can't decide that? Well, it's a fundamental federal issue, so this gets back to what the state court is being asked to decide, Your Honor. The state court is being asked to decide whether or not – what is the deceptive marketing? I think we have to go there first. The core element of the deceptive marketing claimed by the plaintiffs is that Smith & Wesson deceived, was negligent, and embarked on deceptive marketing because it failed to classify the weapon at issue as an NFA weapon, market it accordingly, and then follow NFA requirements. Now, there are other parts of the theory, though, right? There are two. Well, there are arguments about associating the product with the military. Two, yeah. Marketing to young men in particular, promoting the adrenaline rush, and so on. So it's not clear to me. We've said, for example, that on attempts to invoke Grable theories of jurisdiction, that the federal issue has to be inescapable. It seems to me like there are plenty of other ways that the plaintiffs could prevail without prevailing on the machine gun theory. If I could be directly – there are two ways that are alleged that the marketing was deceptive or negligent. One is claimed by – an affirmative claim where the product was associated with the military and police, which, according to the plaintiff, was seductive, for lack of a better word, to young men, and false. The other one, which is at issue here, involves separate facts, separate theory, separate relief. It's an entirely separate claim. And that's the interesting part about this complaint is that it has embedded in it, to use the language of Grable, an entirely separate claim where they're going to stand in front of a state court judge. And they're going to say, Your Honor, part of our claim here is that it was deceptive, illegal, and negligent because they failed to identify this weapon as an NFA weapon. So therefore, you have to make that call in order to issue our injunctive relief, and the injunctive relief we're asking Your Honor to make, state court judge, is to order them to classify it as an NFA weapon and market it accordingly. You place that issue in front of the state court. You would do better if you used fewer initialisms. We are not experts. Use real words. They're asking the state court to make a fundamentally federal determination. Was the weapon that was used on this horrible day an illegal firearm under the National Firearms Act? To do that and to decide on the fundamental question, which is whether or not the advertising was deceptive or illegal. They clearly are asking the state court to answer that question. The question is whether the state court must answer that question to even get through the grable door. And I don't see how they have to do that. They've alleged a deceptive marketing campaign. Because it's a separate claim. Why do you say it's a separate claim? Because it relies on different facts. It has different relief and different elements. The facts that it relies – see, you're questioning, Judge Hamilton, if I may be heard on why it's different facts. Okay. On the one hand, we'll divide the deceptive marketing claim into two camps. Well, you want to do that. Well, they allege that. That's the question. Well, they allege that. For example, I mean, read directly from their complaint. In count one, it's the Illinois Consumer Fraud and Deceptive Practices Act. We failed to identify its M&P assault rifle as an NFA weapon. That is part of the claim. I have no disagreement with you about that. But I don't know how familiar you are with our jurisprudence under the Armed Career Criminal Act. I'm not. Okay. Federal judges have spent the better part of the last 30 years deciding how to classify various prior felony convictions as violent or not. And the Supreme Court has spent a lot of time telling us how to do that in distinguishing between essential elements of felony offenses and different means or ways of committing them. And on the deceptive marketing campaign here, I understand that they're saying one of the ways this was deceptive was that you did not identify these assault rifles as machine guns under the National Firearms Act. But that's only one of several ways. That's right. That would suggest to me that it is not an inescapable issue. Well, I would point to the cases that we cite on how you differentiate claims and different claims. Courts recognize that two legal theories sufficiently distinct that call for proof of substantially different facts may be separate claims. So here we have different facts that have to be proved. So did we omit certain issues and were they deceptive, i.e., we failed to identify the weapon as an illegal National Firearms Act weapon is completely distinctive and separate from whether or not we made affirmative representations that then deceived the alleged shooter. So there are entirely two camps. And we would go back again for the omission claim, which is the inescapable claim, which the state court judge has to wrestle with. Did they commit a false and deceptive advertising by failing to identify this as a National Firearms Act weapon, illegal weapon? I've got to determine, I'm sitting as the state court judge, whether or not this thing was, in fact, an illegal NFA weapon in the first place. And our point is that is inescapable. And what it is, it's the invasion under the directed-to prong of federal officer jurisdiction. It's a case really directed to the ATF because it goes into their authority and province on the classification and, frankly, Congress's. It's a fundamentally federal issue that the state court is being asked to decide. And, candidly, the whole issue of causation is a federal issue, right? They say throughout their brief that this would never have happened had Smith and Wesson identified this and treated this as an illegal firearm under the NFA. So, from a fundamental standpoint, it's inescapable with a general notice pleading that they're going to stand in front of a state court and say, Your Honor, it's like having three different breach of contract claims. You've decided Section 2 of the contract. Now here's Section 4 of the contract. And the breach of Section 4 relies on a completely distinct and different set of facts. They're going to say, Your Honor, now that you've made your decision on the affirmative representation claim, we have alleged clearly that they've committed false, deceptive, and negligent advertising on an entirely different set of facts. They failed to do this. They failed to say that this was an illegal NFA weapon. That's deceptive. Look at our counts. It's in each one of our counts, the failure to identify this and treat this accordingly. You have to make that call, Your Honor. Is it correct that Discovery has been stayed during this appeal? It is. And we have, I think I have 2 minutes and 14 seconds left, which I'd like to reserve for rebuttal if I could. Certainly, Counsel. Thank you. Ms. Lefkowitz. Good morning. My name is Alla Lefkowitz, and I represent the plaintiffs in this consolidated set of cases, each of whom are victims of the mass shooting at the Highland Park Fourth of July Parade. They seek justice for the harm that was done to them by bringing state claims in state court. However, Smith & Wesson asks this court to disregard the vast majority of plaintiffs' complaint so that they can defend this case in its preferred form. But the problem is that every reason that Smith & Wesson gives for removing this case to federal court is foreclosed by precedent from this circuit and the Supreme Court. I just want to touch very, very briefly on the federal officer argument prior to turning to Grable. Just to correct the record, the plaintiffs are not seeking to challenge any determination that the Smith & Wesson M&P rifle is not a machine gun under the National Firearms Act. There is no such determination that has been made by the Bureau of Alcohol, Tobacco, and Firearms. There is also no such thing as a global determination made by the Bureau that all AR-15 rifles are not machine gun. Every firearm is different, and a firearm that has one set of characteristics may be considered a machine gun, while a different one that's slightly different may not be a machine gun. As Judge Easterbrook indicated, what Smith & Wesson is really arguing is that had we been doing something wrong, ATF would have told us, and they would have told us to stop selling in the way that we are. That is a defense, and it is a defense that Smith & Wesson can raise in state court. A defense does not bring a case into federal court. I will turn, unless the court has questions on the federal officer removal, I will turn to Grable. Are you giving up your argument that all the defendants failed to join the removal? We are not. Hard to see how we reach Grable without first resolving that question. We are not. We do argue and we do agree that as a threshold issue, really none of the federal question arguments here should be reached because Smith & Wesson was required to get consent from all of their co-defendants if they wanted to use 28 U.S.C. 1441C. I'm sorry, 1441A, but instead they proceed under 1441C. 1441C, however, is only available in cases where there are both federal claims and such unrelated state court claims that a federal court cannot exercise supplemental jurisdiction. That is not the case here. Each of the claims against both the shooter, the father, the gun stores, and Smith & Wesson are all intertwined and all related to the same set of facts. So removal under 1441C was simply not available to Smith & Wesson and that they would have been required to get consent if they wanted to proceed under 1441A. However, if this court were to reach Grable, Smith & Wesson would be required to show that each test, the Grable test, is met. And Smith & Wesson fails on each factor. That way of phrasing it implies that you can read Grable and figure out what it requires. There is a lot of doubt in the legal world whether anybody can identify what the Grable test is short of reproducing the opinion. Well, I would say, Your Honor, based on the precedent of this court, something that is absolutely necessary is that for the federal issue that is raised on the face of the complaint to be necessary to the resolution of one of the claims. And that is simply not the case here. Every single claim that the plaintiffs bring is relying on multiple theories of liability. And I understand that Smith & Wesson is relying on precedent from the Second Circuit in an effort to split up our claims into different causes of action. But this circuit... There's no such thing in federal practice as cause of action. The word is claims.  I will stick with claims. Causes of action in federal court were abolished in 1936. I will use claims going forward. And as this court held in Sochka v. Bovis-Lendlease in 2012, one claim supported by multiple theories does not somehow become multiple claims. And in that case, a construction worker who was injured working on a tower in downtown Chicago brought a negligent construction claim based on eight different theories of liability. One of those theories of liability had to do with the fact that it was very windy that day and there should have been no construction in the first place. A second theory of liability was that the construction worker, because he was relatively new, should have been supervised by a carpenter, I believe, and he wasn't. Those are two separate facts. Yet the court specifically rejected the argument that those claims should be split apart. It said the complaint contains one count and one claim, construction negligence, committed in a variety of different ways. That is exactly what we have here. The court said something very similar in Florek v. Mundelein, Illinois, 649 F3D 594. That's this circuit's case from 2011. There the case dealt with a Fourth Amendment claim that was brought by an individual who had had a heart attack while she was being arrested. And she had one of the theories there was based on, I apologize, the plaintiff really argued that she had brought two claims, one based on the police denying her baby aspirin when she asked for it, and another claim was based on the police refusing to call the ambulance when she asked for it. But the court said the case should have been presented to the jury as a single claim, whether the police violated Florek's constitutional rights by failing to respond to her medical need. And for that, this court cited a Supreme Court case that said a cause of action... Well, the Baltimore Supreme Court said that what it referred to as a cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. And again, this is exactly what the plaintiffs allege here. I won't go through all of the gravel factors here, but I will just list one more. And that is the fact that removing this state court case into federal court would disrupt the balance between federal courts and state courts. This is exactly the kind of case that the Supreme Court told us, and Merrill Dow should stay in federal court, because so many negligence claims include an allegation of a violation of federal law. And I believe when Grable was talking about Merrill Dow, it specifically talked about the hoard of original filings and removal cases that would result if state court law claims based on violations of law could be removed. Ms. Lefkowitz, you agree that you are asking for a declaration in one form or another that the defendant's product is a machine gun under the National Firearms Act. Neither of the complaints actually in the declaratory relief specifically ask... That's correct. I don't want to quibble about this. So, first of all, the theory is that millions of Americans then are committing a crime by possessing those products, correct? I don't think the—I mean, that is certainly a defense. That is the logical consequence of the argument you're making, correct? Correct. May or may not be correct. We'll see. But we know that the federal government has not tried to enforce that provision against these sorts of assault rifles for decades. How can you prevail on your false or deceptive advertising claim without the state court deciding that question? We have a number of additional different theories of liability under the deceptive claim. Specifically, the one that I believe we are most focused on is the fact that Smith & Wesson deceptively marketed its firearm as being associated with the military and police when it is in fact not. That is the main argument in both sets of complaints, and plaintiffs can get all of the relief that they are seeking if the court simply reaches that—rules in our favor on that point. And one of the things that Smith & Wesson asks us to do—I apologize— asks this court to do is essentially disregard all of plaintiff state court claims under the idea that they are essentially frivolous. And we are not aware of a single case in the federal question context where federal courts evaluate state court claims in such a way. I understand that in some cases in fraudulent joinder, there is some evaluation of the state court claims, but not in these kinds of cases. And it would be just completely new and inappropriate here. I'll just very briefly touch on the preemption argument, very briefly, just to say that this court has been very, very clear that the doctrine of preemption in the removal context refers only to complete preemption where the federal government has occupied the field. The court most recently said that in Martin v. Peterson Health in 2022. And there the court said, only when federal law creates an exclusive cause of action and sets forth procedures and remedies governing that cause of action such that it wholly displaces the state law cause of action. And neither the National Firearms Act nor the Administrative Procedures Act are such statutes. At best, what Smith and Wesson is arguing for is conflict preemption. And as this court has said in Franciscan Scamp Health Care, conflict preemption is an issue left to the state court since conflict preemption does not provide an independent basis for federal removal. Unless the court has any other questions, I will just end by saying that our clients are looking for compensation for their catastrophic injuries and for the loss of their family members caused by the unlawful and negligent conduct of Smith and Wesson. I understand that Smith and Wesson doesn't want to litigate that case, which is this case, but that doesn't mean it gets to turn this case into something that it's not. Thank you. Thank you, counsel. Anything further, Mr. Shuderman? Judge Easterbrook, just a couple of points. First, I want to go back to something that Judge Hamilton said at the very beginning because I think it bears repeating. Our characterization in the brief of what happened on July 4th, and I feel professionally obligated to say this as a human being and on behalf of Smith and Wesson, if anything, was a result of a page limitation. There's no way, shape, or form to undermine, minimize what happened and the horror that happened and the families that were impacted by what the shooter did. Turning back to the merits, I think I heard Ms. Lefkowitz just flat out say in response to Judge Hamilton and your question that she's looking for the state court to decide and declare that the weapon used here was an illegal firearm under the National Firearms Act. That's a federal determination. That's the issue that can't be avoided. It's not a different theory. Then she's going to ask for a different relief. What's the relief? It's injunctive relief. And what do you say about the fact that not all defendants joined the notice of removal? We'll rest, Your Honor, on what we said in the brief, that 1442, the consent requirement. 1442 does not require any other. 1441C. Yeah. So you're just resting on your brief. Well, the operational facts giving rise to the claim against Smith and Wesson are entirely different than that against the other defendants. Nobody else is alleged to have advertised here. You don't think there's supplemental jurisdiction over all the claims in the case? That's purely state court claims on the other defendants. Well, we'll rest on our brief. I can't recall. All right. Thank you. Thank you, counsel. The case is taken under review.